CARLOS JIMENEZ, Bar No. 227534
cajimenez@littler.com
LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
Telephone: 213.443.4300
Facsimile: 213.443.4299

MAGGY M. ATHANASIOUS, Bar No. 252137
mathanasious@littler.com
LITTLER MENDELSON, P.C.
2049 Century Park East, 5th Floor
Los Angeles, CA 90067
Telephone: 310.553.0308
Facsimile: 310.553.5583

LINDA N. BOLLINGER, Bar No. 289515
lbollinger@littler.com
LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
Telephone: 408.998.4150
Facsimile: 408.288.5686

Attorneys for Defendants
PPG INDUSTRIES INC., SIERRACIN/SYLMAR
CORPORATION, and SIERRACIN
CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO CASTRO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PPG INDUSTRIES, INC., a Pennsylvania corporation; SIERRACIN/SYLMAR CORPORATION, a California corporation; SIERRACIN CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:20-cv-02110- PA-(MRWx)<br><br>ASSIGNED FOR ALL PURPOSES TO THE HON. PERCY ANDERSON<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO STRIKE PAGA REPRESENTATIVE CLAIMS**<br><br>Date: January 4, 2021<br>Time: 1:30pm<br>Location: Courtroom 9A<br><br>Complaint Filed: January 31, 2020<br>Trial Date: March 9, 2021 |

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike

Case No. 2:20-cv-02110- PA-(MRWx)

# TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ................................................................. 1

II. PROCEDURAL AND FACTUAL BACKGROUND ........................ 2

    A. Defendant Sierracin/Sylmar Corporation. ......................... 2

    B. Sylmar Maintained Lawful Policies And Practices. ................ 4

        1. Sylmar's Lawful Meal And Rest Breaks Policies And Practices. ......................................................... 4

        2. Employees Are Prohibited From Working Off-The-Clock And All Overtime Is Paid. ................................... 5

        3. Sylmar's Policy And Practice Is To Pay Necessary Business Expenses Incurred By Employees. ................. 6

        4. Sylmar's Practice To Require Drug Testing As A Pre-Condition To Employment. ................................. 6

    C. Sylmar's Wage Statements and Cure of Same. ..................... 6

    D. Denial of Certification of Several Subclasses........................ 7

III. LEGAL ANALYSIS ........................................................ 8

    A. Legal Standard. ........................................................ 8

    B. Plaintiff's Unwieldy Rest Break PAGA Claim Should Be Stricken. ..... 10

    C. Plaintiff Cannot Prevail On His PAGA Claim for Violation of Labor Code Section 226 for Wage Statement Violations...................... 13

    D. Prospective Meal Break Waivers Are Not a Proper Basis for a Representative Claim and Plaintiff's PAGA Claim Must Be Stricken........................................................ 15

    E. Plaintiff's Preemployment Drug Testing Expense Reimbursement And Unpaid Wage Claims Are Inherently Unmanageable.................... 16

    F. Plaintiff's Cell Phone Reimbursement Claim Is Not Subject to Common Proof. ......................................................... 19

    G. Plaintiff's Off-The-Clock Unpaid Wage And Overtime PAGA Claims Are Similarly Unmanageable And Must Be Stricken. .............. 22

    H. Plaintiff's Remaining PAGA Claims Are Similarly Unmanageable And Must Be Stricken. ................................................ 24

IV. CONCLUSION ........................................................... 24

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike

i.

Case No. 2:20-cv-02110- PA-(MRWx)

# TABLE OF AUTHORITIES

**PAGE**

**Cases**

*Amiri v. Cox Commc'ns California, LLC*,
 272 F. Supp. 3d 1187 (C.D. Cal. 2017) ................................................................. 10

*Arias v. Superior Court*,
 46 Cal. 4th 969 (2009) ........................................................................................ 8, 9

*Augustus v. ABM Security Services, Inc.*,
 2 Cal. 5th 257 (2016) .............................................................................................. 11

*Betancourt v. OS Rest. Servs., LLC*,
 49 Cal. App. 5th 240 (2020), *reh'g denied* (May 18, 2020) ................................ 14

*Bowers v. First Student, Inc.*,
 2015 U.S. Dist. LEXIS 54238 (C.D. Cal. Apr. 23, 2015) ...................................... 9

*Bradley v. Department of Corrections & Rehabilitation*,
 158 Cal. App. 4th 1612 (2008) .............................................................................. 17

*Bronco Wine Co. v. Loguso Farms*,
 214 Cal. App. 3d. 699 (1989) .................................................................................. 9

*Brown v. American Airlines, Inc.*,
 2015 U.S. Dist. LEXIS 150672 (C.D. Cal. Oct. 5, 2015) ...................................... 9

*Brum v. MarketSource, Inc.*,
 2017 WL 4883376 (E.D. Cal., Oct. 27, 2017)................................................. 16, 18

*Cummings v. Starbucks Corp.*,
 2014 WL 1379119 (C.D. Cal. Mar. 14, 2014) ...................................................... 11

*Davidson v. O'Reilly Auto Enters., LLC*,
 2020 U.S. App. LEXIS 24343 (August 3, 2020) ................................................... 13

*Dugan v. Ashley Furniture Industries Inc.*,
 2016 WL 9173459 (C.D. Cal. Nov. 29, 2016) ...................................................... 21

*Duran v. U.S. Bank, N.A.*,
 59 Cal. 4th 1 (2013)................................................................................................. 9

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

**TABLE OF AUTHORITIES**
(CONTINUED)

PAGE

*Foley v. Interactive Data Corp.*,
   47 Cal. 3d 654 (1988) ......................................................................... 18

*Gattuso v. Harte-Hanks Shoppers, Inc.*,
   42 Cal. 4th 554 (2007) ........................................................................ 20

*Gonzalez v. OfficeMax North Am.*,
   2012 WL 5473764 (C.D. Cal. 2012) .................................................... 11

*Grissom v. Vons Companies, Inc.*,
   1 Cal. App. 4th 52 (1991) .................................................................... 20

*Gunawan v. Howroyd-Wright Employment Agency*,
   997 F. Supp. 2d 1058 (C.D. Cal. 2014) ............................................... 17

*Guz v. Bechtel Nat. Inc.*,
   24 Cal. 4th 317 (2000) ........................................................................ 18

*Hamwi v. Citinational-Buckeye Inv. Co.*,
   72 Cal. App. 3d 462 (1977) ................................................................. 23

*Klune v. Ashley Furniture Industries, Inc.*,
   2015 WL 1540906 (C.D. Cal. Apr. 3, 2015) ........................................ 21

*Lampe v. Queen of Valley*
   19 Cal. App. 5th 840 ............................................................................ 15

*Linder v. Thrifty Oil, Co.*,
   23 Cal. 4th 429 (2000) ........................................................................ 23

*Ling v. P.F. Chang's China Bistro*,
   245 Cal. App. 4th 1242 (2016) ............................................................ 14

*Litty v. Merrill Lynch & Co.*,
   2014 U.S. Dist. LEXIS 160448 (C.D. Cal. Nov. 10, 2014) .................. 10

*Morgan v. Wet Seal, Inc.*,
   210 Cal. App. 4th 1341 (2012) ............................................................ 20

*Murray v. Scelzi Enters.*,
   2019 U.S. Dist. LEXIS 198783 (E.D. Cal. Nov. 15, 2019) .................. 12

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

# TABLE OF AUTHORITIES
### (CONTINUED)

PAGE

*Naranjo v. Spectrum Security Services, Inc.*,
40 Cal. App. 5th 444 (2019), *as modified on denial of reh'g* (Oct. 10, 2019), *review granted & depublication denied* .......................................................... 14

*Occidental Land, Inc. v. Superior Court*,
18 Cal. 3d 355 ........................................................................................................... 23

*Ortiz v. CVS Caremark Corp.*,
2014 U.S. Dist. LEXIS 36833 (N.D. Cal. Mar. 18, 2014) ................................ 9, 22

*Patel v. Nike Retail Servs., Inc.*,
2016 U.S. Dist. LEXIS 172257 (N.D. Cal. Dec. 12, 2016) .................................. 10

*Post v. Palo/Haklar & Assoc.*,
23 Cal. 4th 942 (2000) ............................................................................................ 17

*Pyara v. Sysco Corp.*,
2017 WL 928715 (E.D. Cal. Mar. 9, 2017)........................................................ 20, 21

*Rai v. CVS Caremark Corp.*,
2013 WL 10178675 (C.D. Cal. 2013) .................................................................... 11

*Raphael v. Tesoro Ref. & Mktg. Co. LLC*,
2015 U.S. Dist. LEXIS 130532 (C.D. Cal. Sep. 25, 2015) ............................... 9, 22

*Ritenour v. Carrington Mortg. Servs., LLC*,
2018 U.S. Dist. LEXIS 226668 (C.D. Cal. Sept. 12, 2018) ........................... 12, 13

*Rope v. Auto-Chlor Systems of Washington, Inc.*,
220 Cal. App. 4th 635 (2013) .................................................................................. 8

*S. G. Borello & Sons, Inc. v. Department of Industrial Relations*,
48 Cal. 3d 341 (1989) .............................................................................................. 17

*Salazar v. McDonald's Corp.*,
2017 WL 88999 (N.D. Cal. Jan. 5, 2017)............................................................... 10

*Sali v. Universal Health Servs. of Rancho Springs, Inc.*,
2015 WL 12656937 (C.D. Cal. June 3, 2015) (Gutierrez, J.), *reversed on other grounds*, 909 F.3d 996 (9th Cir. 2018) ................................................... 15

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike

iv.

Case No.  2:20-cv-02110- PA-(MRWx)

# TABLE OF AUTHORITIES
### (CONTINUED)

**PAGE**

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983) ........................................................................ 8

*Sullivan v. Kelly Services, Inc.*,
   2009 WL 3353300 (N.D. Cal. 2009) ............................................................ 17

*In re Taco Bell Wage & Hour Actions*,
   2012 WL 5932833 (E.D. Cal. Nov. 27, 2012) ............................................. 11

*In re Taco Bell Wage and Hour*,
   2013 WL 28074 (E.D. Cal. Jan. 2, 2013) .................................................... 11

*Williams v. Superior Court*,
   3 Cal. 5th 531 (2017) ............................................................................... 9, 10

**Statutes**

Code of Civil Procedure § 382 ........................................................................ 9

Labor Code §§ 22, 226.7, 512 ........................................................................ 15

Labor Code § 201, 202, and 203 ...................................................................... 1

Labor Code § 204 .................................................................................... 1, 24

Labor Code § 222.5 ................................................................................. 2, 16

Labor Code § 226 ........................................................................................ 13

Labor Code § 226(a)(8) ........................................................................ 1, 13, 14

Labor Code § 226(e)(8) ................................................................................ 14

Labor Code §§ 226.7, 512, 516, 1198 .............................................................. 1

Labor Code § 510 ......................................................................................... 1

Labor Code § 1174(d) ................................................................................... 1

Labor Code § 1182.12 .................................................................................... 1

Labor Code § 2699(c) .................................................................................... 8

### TABLE OF AUTHORITIES
#### (CONTINUED)

**PAGE**

Labor Code § 2699(f)(2) ............................................................... 8

Labor Code §§ 2699.3(c)(2)(A) and 2699.5 ............................... 14

Labor Code § 2802 ................................................................. 2, 20

Labor Code § 2802(a) ................................................................ 17

Labor Code §§ 6401 and 6403 ..................................................... 2

**Other Authorities**

Assembly Bill 3363 ................................................................... 13

Federal Rule of Civil Procedure 12(f) ......................................... 8

Federal Rule of Civil Procedure 23 ........................................ 9, 20

IWC Wage Order 1-2001, Section 11(B) .................................. 15

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike

vi.

Case No.  2:20-cv-02110- PA-(MRWx)

# I.     INTRODUCTION

Plaintiff Rogelio Castro ("Plaintiff") brought this case as a class action lawsuit and representative action under the California Private Attorneys General Act ("PAGA") against Defendant Sierracin/Sylmar Corporation[1] ("Defendant" or "Sylmar"), asserting various wage and hour claims, including a representative PAGA claim based on the following alleged violations:

(a) Violation of Labor Code sections 510, 1198, and the applicable IWC wage order for Defendants' failure to compensate Plaintiff and other aggrieved employees with all required overtime;

(b) Violation of Labor Code sections 1182.12. 1194, 1197, 1197.1, 1198, and the applicable IWC wage order for Defendants' failure to compensate Plaintiff and other aggrieved employees with at least minimum wages for all hours worked;

(c) Violation of Labor Code sections 226.7, 512, 516, 1198, and the applicable IWC wage order for Defendants' failure to provide Plaintiff and other aggrieved employees with meal periods;

(d) Violation of Labor Code sections 226.7, 516, 1198, and the applicable IWC wage order for Defendants' failure to authorize and permit Plaintiff and other aggrieved employees to take rest periods;

(e) Violation of Labor Code sections 226(a), 1198, and the applicable IWC wage order (excluding violations of Labor Code section 226(a)(8)) for failure to provide accurate and complete wage statements to Plaintiff and other aggrieved employees;

(f) Violation of Labor Code sections 1174(d), 1198, and the applicable IWC wage order for failure to maintain payroll records;

(g) Violation of Labor Code sections 201, 202, and 203 for failure to pay all earned wages upon termination;

(h) Violation of Labor Code section 204 for failure to pay all earned wages during employment;

---

[1] Defendants PPG Industries, Inc. ("PPG") and Sierracin Corporation ("Sierracin") did not employ Plaintiff or the class members.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    1.                    Case No.  2:20-cv-02110- PA-(MRWx)

(i) Violation of Labor Code section 222.5 for failing to pay the costs of mandatory drug tests and/or physical examinations;

(j) Violation of Labor Code section 2802 for failure to reimburse Plaintiff and other aggrieved employees for all business expenses necessarily incurred; and

(k) Violation of Labor Code sections 6401 and 6403 for failure to provide personal protective equipment ("PPE").

First Amended Complaint ("FAC"), ¶ 125. However, the PAGA claims here are unmanageable to try in light of the predominant individualized issues required to decide liability as to each individual. Given the sheer number of allegedly aggrieved employees and the immutable requirement that Plaintiff must prove a Labor Code violation as to each pay period in which he seek penalties and as to each allegedly aggrieved employee, Plaintiff will be unable demonstrate that the PAGA claims can be tried on a representative basis. Plaintiff cannot prove on a representative basis that Sylmar denied non-exempt employees their legally required rest breaks, that representative class members suffered an injury with respect to their wage statements, that prospective meal period waivers are invalid, that preemployment drug testing converts applicants to employees such that they are owed wages and business expense reimbursements, that employees were required to work off-the-clock and were therefore owed minimum wages or overtime, and that employees were required to use their personal cellular phones for business purposes or were not provided PPE. Thus, as more fully demonstrated herein, Plaintiff should be barred from proceeding with representative PAGA claims in this action.

Accordingly, and for the reasons set forth below, Defendants respectfully request that this Court grant their motion to strike Plaintiff's representative claims under the PAGA in their entirety.

## II.     PROCEDURAL AND FACTUAL BACKGROUND

### A.     Defendant Sierracin/Sylmar Corporation.

Defendant Sylmar is a leader in the development of advanced plastic and glass

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    2.                    Case No.  2:20-cv-02110- PA-(MRWx)

composite technology and coating systems used in the production of canopies, windows and windshields. Declaration of Paula Holman In Support of Defendants' Motion to Strike ("Holman Decl.") ¶ 3. Sylmar manufactures military grade aerospace transparencies, including windows, windshields and other parts for military, commercial and general aviation aircraft applications at its manufacturing plant located in Sylmar, California. *Id.*

Approximately 366 Sylmar employees in California in non-exempt, hourly positions during the Relevant Time Period[2] make up the group of allegedly "aggrieved employees." Holman Decl. ¶ 4. The aggrieved employees are comprised of hundreds of employees who are dissimilar in numerous respects, working full-time and across day, evening, and night shifts of various lengths. *Id.* They work in about 26 job positions, including various and distinct manufacturing and production technicians who work on Process Specifications with different machines across different work center environments during various phases of manufacturing. *Id.* Based on innumerable factors: the department, the process specifications, the specific supervisor's abilities, the constant and unpredictable fluctuations in the production schedule, employee job duties, employee's personal preferences, and varying staffing ratios – the individualized experiences of the 366 allegedly aggrieved employees vary significantly.[3] *Id.* Plaintiff worked as a Metallic Coatings Technician from approximately July 27, 2011 through March 1, 2019. Holman Decl. ¶ 5.

---

[2] January 31, 2019 to the present for the representative claims.

[3] Declaration of Carlos Jimenez In Support of Defendants' Motion to Strike ("Jimenez Decl.") ¶¶ 4-9, Exhs. C-H, Witness Declarations: Declaration of George Alatorre ("Alatorre Decl.") ¶ 4 (Lamination Technician working with placing transparencies in lamination bags before cooking the windows in the autoclave); Declaration of Juan Aldana ("Aldana Decl.") ¶ 4 (Forming Technician working with forming polycarbonate sheets into molds); Declaration of Jose Barillas ("Barillas Decl.") ¶ 3 (Coatings Technician who inspects parts and applies various coatings to parts); Declaration of Francisco Rico Cortes ("Cortes Decl.") ¶¶ 2, 4 (Assembly Line Worker turned Computer Numerical Control ("CNC") Operator who uses the machines to drill and cut windows); Declaration of Luis Galeana ("Galeana Decl.") ¶ 4 (Production Lead who oversees operators in painting, sealing, and inspection of windows); Declaration of Jose Perez ("Perez Decl.") ¶ 2 (CNC Technician who sets up and runs the machines).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    3.                    Case No.  2:20-cv-02110- PA-(MRWx)

### B.   Sylmar Maintained Lawful Policies And Practices.

Sylmar maintains legally compliant policies in its Employee Handbook (along with California supplements including meal and rest break policies), which are generally distributed during new hire orientation and accessible to employees on the Company's intranet. Jimenez Decl. ¶ 3, Exh. B, Deposition of Paula Holman ("Holman Depo.") 49:8-18, Exh. 4.

### 1.   Sylmar's Lawful Meal And Rest Breaks Policies And Practices.

At all relevant times, Sylmar maintained compliant meal and rest break policies and practices. Sylmar's rest period policies provide a paid 15 minute rest period for every four hours of work or major fraction thereof, meaning one 15 minute rest period for shifts that are three and a half hours or more, and a second 15 minute rest period for shifts that are six hours or more, and so on. *Id*. Sylmar's meal period policies are likewise lawful. Sylmar provides a 30-minute unpaid meal period to employees who work more than five hours in a workday before the end of the fifth hour of work and a second 30-minute meal period to employees who work more than 10 hours in a workday before the end of the tenth hour of work. *Id.*; Holman Decl. ¶ 6. Employees are relieved of all of their duties during meal periods and are allowed to leave the premises. Holman Decl. ¶ 6. Employees may waive the first meal period by mutual consent when a work period of not more than six hours will complete the day's work. Holman Decl. ¶ 6; Holman Depo. 64:5-65:11, Exh. 21. Employees may waive the second meal period by mutual consent when the total hours worked on the workday are not more than 12 and the first meal break was not waived. Holman Decl. ¶ 6.

With respect to scheduling, overall guidelines for meal and rest periods are provided to department supervisors by the production manager. Holman Decl. ¶ 7. Department supervisors then operate within these guidelines to schedule the breaks for their respective departments as needed (some work centers have machines that might dictate a staggered or rotating meal and rest break schedules, while others do not and the entire department takes their breaks together). *Id.* Each department complies with

Defendants' MPA ISO Motion to Strike

4.

Case No.  2:20-cv-02110- PA-(MRWx)

1   the Company's meal and rest policies, but the complex nature of the manufacturing

2   process means the departments do so in a variety of ways. *Id.* Some employees rotate

3   breaks while others work shifts designed to hand off to others. *Id.* By contrast, other

4   work centers do not continuously run their machines and thus completely shut down for

5   breaks. *Id.* Further, the meal breaks and paid rest breaks are not "on call," as there is no

6   practice requiring class members to carry, monitor or answer a communication device

7   or to otherwise report for duty during their breaks. *Id.*; Alatorre Decl. ¶ 10; Barillas

8   Decl. ¶ 11; Cortes Decl. ¶ 11; Galeana Decl. ¶ 14; Perez Decl. ¶ 18.

9        Although Sylmar's rest break policy states that employees may not leave work

10  premises during a rest break, in practice, employees are permitted to (and do) take their

11  rest breaks in a wide variety of areas, including outside/on the grounds of the Plant. *See*

12  Jimenez Decl. ¶ 2, Exh. A, Deposition of Rogelio Castro ("Castro Depo.") 221:11-22;

13  Perez Decl. ¶ 16; Barillas Decl. ¶11; Galeana Decl. ¶ 13.

14       To the extent any non-exempt employee believes he or she has been precluded or

15  prevented from taking a meal or rest break pursuant to Sylmar's policies, he or she can

16  complete a Meal Period and Rest Break Premium Request Form and submit it to his/her

17  manager by the end of the pay period. Holman Depo. 57:11-58:5. If there is a reported

18  issue with any break, the supervisor or manager will follow up with the individual

19  employee to determine a solution. *Id*. at 58:6-59:9.

20        **2.**    **Employees Are Prohibited From Working Off-The-Clock And**

21             **All Overtime Is Paid.**

22       At all relevant times, Sylmar has maintained policies prohibiting off-the-clock

23  work. *See* Castro Depo., 117:3-24; Exh. 12, p. K-1. Specifically, Sylmar prohibits

24  employees from working off the clock and pays overtime for all hours worked in excess

25  of eight (8) hours per day and in excess of forty (40) hours per week. Holman Decl. ¶

26  8. All non-exempt employees are required to report hours worked via Sylmar's Kronos

27  system. *Id.*; *see* Castro Depo., 117:3-24; Exh. 12, p. K-1.  Mistakes, mis-punches or

28  other timekeeping issues should be reported to a supervisor.  Holman Decl. ¶ 8.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to
Strike               5.             Case No.  2:20-cv-02110- PA-
(MRWx)

### 3. Sylmar's Policy And Practice Is To Pay Necessary Business Expenses Incurred By Employees.

At all relevant times, Sylmar has maintained a travel and business expense policy in its handbook that states: "The Company will reimburse actual, reasonable and necessary expenses incurred by employees while conducting Company business." *See* Castro Depo., 117:3-24; Exh. 12, p. K-7. Thus, to the extent an employee incurred a business expense, he or she need only submit the expense for reimbursement. *Id.* If an employee travels on behalf of the Company, there are further detailed policies that can be found on Sylmar's intranet. *Id.*

### 4. Sylmar's Practice To Require Drug Testing As A Pre-Condition To Employment.

Prior to employment, prospective hires are required to complete a preemployment intoxicant screen. Holman Decl. ¶ 9. If the position for which a prospective hire is regulated by the FAA, a urine analysis drug test is also required prior to employment. *Id*. This requirement prior to employment is included in a prospective hire's offer letter in which it states: "This offer of employment is contingent upon your passing our intoxicant screen and background check." *Id*. Only after a prospective hire passes the drug test would they be eligible to be hired and to begin their first day of employment. *Id.*

### C. Sylmar's Wage Statements and Cure of Same.

The wage statements Sylmar provided through February 21, 2020 listed an address for Sierracin/Sylmar Corporation of "One PPG Place, Pittsburgh, PA 15272." Holman Decl. ¶ 10. This is a valid address for Sierracin/Sylmar Corporation's corporate parent, which handles human resources and payroll for its California subsidiary from the Pittsburgh address. *Id.* However, on February 21, 2020, in an abundance of caution, Sylmar availed itself of the Cure process permitted by the PAGA and re-issued wage statements listing Sylmar's actual California address, and not PPG's Pittsburg address to all non-exempt employees within a three-year period. Jimenez Decl. ¶ 11; Holman

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to
Strike

6.

Case No.  2:20-cv-02110- PA-
(MRWx)

1    Decl., ¶ 10. Since this date, all wage statements issued to Sylmar employees list its

2    California address.

3        **D.    Denial of Certification of Several Subclasses.**

4        On August 28, 2020, the Court declined to certify several of the subclasses

5    alleged in Plaintiff's motion for class certification, including a meal break subclass, a

6    meal break waiver subclass, and an off-the-clock subclass. *See* Court's Minute Order,

7    Dkt. No. 46. In his motion for class certification, Plaintiff sought to certify a meal break

8    subclass on the theory that Defendants' policies and practices required employees to

9    delay their breaks while machines were running and to respond to machine failures and

10   other work-related issues during meal breaks, preventing subclass members from taking

11   timely, uninterrupted and compliant meal breaks, and further required employees to

12   affirmatively request a premium when Defendants failed to provide the employees with

13   meal breaks. *Id.*, p. 8. Upon review of the declarations submitted by several of

14   Defendants' employees and their attestation they were able to routinely take their meal

15   breaks without interruption, the Court concluded that "to determine liability would

16   require an individualized analysis that might vary by department and supervisor" and

17   that the issues were thus "not amenable to resolution on a class-wide basis." *Id.*, p. 9.

18       Similarly, on the issue of the meal break waiver subclass, Plaintiff challenged

19   Defendants' policy of presenting voluntary and rescindable meal break waiver forms to

20   new employees during their orientations. *Id.*, p. 9. Plaintiff's theory was that it is

21   unlawful for an employer to obtain a prospective waiver before an employee misses a

22   meal break, and must instead obtain a separate waiver after each denied meal break. *Id.*

23   Citing the questionable legal merit of this claim, the Court noted that Plaintiff cited no

24   case law supporting this theory and that Plaintiff himself did not sign one of these

25   allegedly illegal waivers. *Id.* Thus, Plaintiff lacked standing to represent this subclass

26   and class certification was denied. *Id.*, p. 10.

27       Finally, with respect to Plaintiff's off-the-clock claims, Plaintiff alleged that

28   Defendants had a "regular practice of communicating with employees about work-

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    7.                    Case No.  2:20-cv-02110- PA-(MRWx)

1  related matters when they were off-the-clock." *Id.*, p. 6.  However, given Defendants'

2  policy requiring employees to work while on the clock and the declarations submitted

3  showing that other employees did not work off-the-clock or feel pressure to do so, the

4  court concluded that establishing liability for an off-the-clock class would require

5  individualized determinations not suitable for class treatment. *Id.*, p. 6-7.

6  ## III.  LEGAL ANALYSIS

7  ### A.  Legal Standard.

8  Pursuant to Federal Rule of Civil Procedure 12(f), the court may strike "from a

9  pleading an insufficient defense or any redundant, immaterial, impertinent, or

10  scandalous matter." Fed. R. Civ. P. 12(f). The essential function of a Rule 12(f) motion

11  is to "avoid the expenditure of time and money that must arise from litigating spurious

12  issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins*

13  *Co.*, 697 F.2d 880, 885 (9th Cir. 1983).

14  A PAGA claim is a statutory claim which, by definition, must be predicated on a

15  qualifying Labor Code violation. The PAGA statute provides a civil penalty for each

16  aggrieved employee for those pay periods in which the employee demonstrates that he

17  or she ***actually suffered a qualifying Labor Code violation***. Cal. Lab. Code §

18  2699(f)(2). PAGA defines "aggrieved employee" as "any person who was employed by

19  the alleged violator and against whom one or more of the alleged violations was

20  committed." Cal. Lab. Code § 2699(c). Thus, Plaintiff cannot recover any PAGA

21  penalties without first establishing liability for the underlying Labor Code violation.

22  *Arias v. Superior Court*, 46 Cal. 4th 969, 987 (2009)("*Arias*"); *see also Rope v. Auto-*

23  *Chlor Systems of Washington, Inc.*, 220 Cal. App. 4th 635, 651 n. 7 (2013) ("PAGA

24  requires that the representative plaintiff establish that the employer have committed the

25  Labor Code violations for which recovery is sought against the aggrieved employees.").

26  A court may, in its discretion, strike the PAGA representative claims from a

27  Complaint if it determines there is no manageable way to try them. In *Arias*, the

28  California Supreme Court held that a plaintiff bringing a representative action under the

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike

8.

Case No.  2:20-cv-02110- PA-(MRWx)

PAGA need not satisfy the class action requirements of Code of Civil Procedure section 382. *Arias*, 46 Cal. 4th at 987. Critically, however, *Arias* did ***not*** hold that a trial court must permit a plaintiff to pursue a representative PAGA action regardless of the manageability of the underlying claim. On the contrary, at least two other California Supreme Court opinions have since held that manageability is an essential prerequisite to trying any sort of PAGA claim. *See Williams v. Superior Court*, 3 Cal. 5th 531, 558-59 (2017) (evidence of a common policy is one way, but not the only way to establish necessary manageability for a PAGA trial); *Duran v. U.S. Bank, N.A.*, 59 Cal. 4th 1, 29-336 (2013) (describing requirement that trial must ultimately be manageable consistent with principles of due process despite fact that manageability is not an express element of Rule 23 or Code of Civil Procedure Section 382); *see also Bronco Wine Co. v. Loguso Farms*, 214 Cal. App. 3d. 699, 719-721 (1989) (reversing denial of motion to strike representative allegations in UCL representative action because denial of the motion "led to insurmountable control and management problems").

As such, nothing in *Arias* precludes a district court from striking or dismissing a PAGA representative action where, as in this case, establishing liability for the predicate Labor Code violations would be unmanageable. In fact, multiple federal district courts have entered the sorts of orders Defendants seek here. *See, e.g.*, *Raphael v. Tesoro Ref. & Mktg. Co. LLC*, 2015 U.S. Dist. LEXIS 130532, at *5-6 (C.D. Cal. Sep. 25, 2015) (striking PAGA claims as unmanageable where court would need to decide "twenty-six relevant inquiries and requirements" to establish each individual's liability and penalties); *Bowers v. First Student, Inc.*, 2015 U.S. Dist. LEXIS 54238, *12 (C.D. Cal. Apr. 23, 2015)("Even if Rule 23 did not apply to PAGA representative claims, such claims can be stricken if they are found to be 'unmanageable'"); *Brown v. American Airlines, Inc.*, 2015 U.S. Dist. LEXIS 150672, at *10 (C.D. Cal. Oct. 5, 2015) ("The Court finds manageability issues exist regarding PAGA overtime claims here. There appears to be too many individualized assessments to determine PAGA violations concerning overtime pay."); *Ortiz v. CVS Caremark Corp.*, 2014 U.S. Dist. LEXIS

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    9.                    Case No.  2:20-cv-02110- PA-(MRWx)

36833, at *10-11 (N.D. Cal. Mar. 18, 2014) (PAGA claim held "unmanageable" because "a multitude of individualized assessments would be necessary."); *Litty v. Merrill Lynch & Co.,* 2014 U.S. Dist. LEXIS 160448, at *6 (C.D. Cal. Nov. 10, 2014) (PAGA claims unmanageable given court had already held that individualized issues predominated in denying class certification of the underlying Labor Code claims); *Salazar v. McDonald's Corp.,* 2017 WL 88999, *8 (N.D. Cal. Jan. 5, 2017)(striking PAGA representative claims for unreimbursed expenses holding that it is appropriate to dismiss or strike PAGA representative claims "where the evidence shows that numerous individualized determinations would be necessary to determine" liability); *Patel v. Nike Retail Servs., Inc.,* 2016 U.S. Dist. LEXIS 172257, *4 (N.D. Cal. Dec. 12, 2016)(holding that "representative PAGA suits may be inappropriate where they require a large number of individual assessments").

The manageability issues here are further heightened given the degree of variability inherent to the group of employees Plaintiff seeks to represent. Plaintiff seeks to represent *all* current and former Sylmar employees in California over the PAGA period in the 26 different manufacturing departments. If Plaintiff wishes to proceed on a representative basis, it is his burden to show that the claims pertaining to the group of alleged "aggrieved employees" can be tried in a manageable fashion without violating Sylmar's right to due process. *Williams*, 3 Cal. 5th at 559 (acknowledging that a PAGA trial must be manageable); *Amiri v. Cox Commc'ns California, LLC,* 272 F. Supp. 3d 1187, 1193–94 (C.D. Cal. 2017) (dismissing PAGA action because the defendant made a showing that the alleged Labor Code violations relied on the unique characteristics of the plaintiff's experience while working for the employer, rather than policies or practices common to the other alleged "aggrieved employees"). This is something that Plaintiff has not done and cannot do and his representative claims must thus be stricken.

### B.   Plaintiff's Unwieldy Rest Break PAGA Claim Should Be Stricken.

Plaintiff's missed rest break claim under the PAGA should be stricken because, to the extent Plaintiff maintains any viable legal theory of liability for rest break

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike

10.

Case No.  2:20-cv-02110- PA-(MRWx)

1   violations, Plaintiff cannot show that he can establish any of the requirements of his

2   claim other than via individualized inquires because no uniform practice of denying

3   aggrieved employees of the opportunity to take rest breaks exists.[4] Thus, Plaintiff's

4   representative PAGA claim is wholly unmanageable and must be stricken.

5          In order to prevail on Plaintiff's rest break claim under the PAGA, Plaintiff must

6   establish as to each and every allegedly aggrieved employee, that the employee was *in*

7   *fact* required to remain on premises and was actually denied rest breaks as a result. As

8   there are no records of where employees took their rest breaks or how long those breaks

9   lasted, there is no common evidence that can demonstrate when a rest break was denied.

10  *See In re Taco Bell Wage & Hour Actions,* 2012 WL 5932833, at *11 (E.D. Cal. Nov.

11  27, 2012) (holding that despite establishing a facially defective policy communicated

12  to all putative class members, the plaintiff lacked a form of class-wide proof because

13  defendants had no records of whether employees took rest breaks), adopted as final

14  order by *In re Taco Bell Wage and Hour*, 2013 WL 28074, at *1 (E.D. Cal. Jan.2, 2013);

15  *see also Cummings v. Starbucks Corp.*, 2014 WL 1379119, at *5 (C.D. Cal. Mar. 14,

16  2014) (noting there was no "common method of proof that can demonstrate when

17  employees were denied a second rest break, because rest breaks are not documented");

18  *Gonzalez v. OfficeMax North Am.*, 2012 WL 5473764, *4 (C.D. Cal. 2012) (no

19  predominance where plaintiff offered no evidence that a uniform rest break policy was

20  implemented uniformly); *Rai v. CVS Caremark Corp.*, 2013 WL 10178675 (C.D. Cal.

21  2013) (competing testimony regarding actual practice meant adjudication would

22  involve predominantly individual issues). The result is no different when analyzing the

23  manageability of a PAGA representative action. Plaintiff will be unable to establish

24  liability based on common proof, rendering this PAGA claim unmanageable.

25

26  [4] Defendant concurrently moves for summary judgment on Plaintiff's rest break subclass claim
    and PAGA claim because Plaintiff's theory that Sylmar maintains an unlawful on-premises
27  rest break policy under *Augustus v. ABM Security Services, Inc.,* 2 Cal. 5th 257 (2016) is not
    viable as a matter of law. *See* Motion for Partial Summary Judgment, Sections III.B and III.F.3.
28  Those arguments are incorporated herein by reference and provide an independent basis for
    striking the rest break PAGA claim here because Plaintiff cannot establish an underlying
    violation of the Labor Code under the PAGA based on his faulty on-premises rest break theory.

Defendants' MPA ISO Motion to Strike          11.          Case No.  2:20-cv-02110- PA-(MRWx)

Plaintiff's reliance on Sylmar's rest break policy is misplaced because, in practice, employees are permitted to (and do) take their rest breaks in a wide variety of areas, including outside/on the grounds of the Plant. Castro Depo. 221:11-22; Perez Decl. ¶ 16; Barillas Decl. ¶11; Galeana Decl. ¶ 13. Further, Plaintiff himself admitted that two 15-minute rest breaks and one 30-minute meal period were scheduled for him. Castro Depo. 213:1-18. There can be no factual dispute that employees, including Plaintiff, were in fact permitted to, and often did, leave the premises for rest breaks. *See* Castro Depo. 221:11-22; Perez Decl. ¶ 16; Barillas Decl. ¶11; Galeana ¶ 13. It is illogical and implausible that Sylmar has a uniform practice of not allowing employees to leave the premises during rest breaks, when employees in fact regularly did so. In any event, this is a highly individualized determination since it would require inquiry into each employee's and work center's specific practices. As mentioned above, the group of allegedly aggrieved employees works in about 26 job positions, including various and distinct manufacturing and production technicians who work on Process Specifications with different machines across different work center environments during various phases of manufacturing. Holman Decl. ¶ 4. Based on innumerable factors: the department, the process specifications, the specific supervisor's abilities, the constant and unpredictable fluctuations in the production schedule, employee job duties, employee's personal preferences, and varying staffing ratios – the individualized experiences of the 366 allegedly aggrieved employees vary significantly. *Id.* It is impossible to imagine how Plaintiff can answer these questions with common proof, nor has Plaintiff presented any method for doing so.

These facts will preclude Plaintiff from proving his rest period claim with common proof. *See, e.g., Murray v. Scelzi Enters.*, 2019 U.S. Dist. LEXIS 198783, *24-26 (E.D. Cal. Nov. 15, 2019) (denying plaintiff's motion to certify rest break claim based on defendant's "on-premises rest policy" where evidence showed it "was not uniformly applied"); *Ritenour v. Carrington Mortg. Servs., LLC*, 2018 U.S. Dist. LEXIS 226668, *8 (C.D. Cal. Sept. 12, 2018) (no predominance where the plaintiffs

Defendants' MPA ISO Motion to Strike

12.

Case No.  2:20-cv-02110- PA-(MRWx)

failed to show the defendant had an on-site rest period policy that was applied uniformly to the putative class members). More importantly, as the Ninth Circuit just recently made clear, the mere existence of a purported defective policy is not sufficient to establish liability. *Davidson v. O'Reilly Auto Enters., LLC*, 2020 U.S. App. LEXIS 24343, *26 (August 3, 2020) ("Put another way, the mere existence of a facially defective written policy—without any evidence that it was implemented in an unlawful manner—does not constitute '[s]ignificant proof,' that a class of employees were subject to an unlawful practice.") (citations omitted). *Ritenour*, 2018 U.S. Dist. LEXIS 226668 at *7 (individualized issues predominated because "[s]etting aside the rest period policy as written, the record indicates that the policy was not uniformly implemented" and employees were able to leave the premises without reprimand). Therefore, Plaintiff's rest break claim under the PAGA must be stricken from the FAC.

## C.   Plaintiff Cannot Prevail On His PAGA Claim for Violation of Labor Code Section 226 for Wage Statement Violations.

Plaintiff contends that Defendants are liable for a violation of California Labor Code section 226(a)(8) because the wage statements they provided through February 21, 2020, listed an address for Sierracin/Sylmar Corporation of "One PPG Place, Pittsburgh, PA 15272." Although this is a valid address for Sierracin/Sylmar Corporation's corporate parents, and the parent corporation handles human resources and payroll for its California subsidiary from the Pittsburgh address, Plaintiff nevertheless seeks PAGA penalties because the wage statements did not list the address of Sylmar's facility in California at which the employees reported for work. FAC, ¶¶ 98-99; Holman Decl. ¶ 10. However, first, as set forth in Defendant's concurrently filed Motion for Partial Summary Judgment, no legal authority supports Plaintiff's argument that the use of a corporate parent's address, when the corporate parent handles human resources and payroll for the employer, violates Section 226(a)(8).[5]

---

[5] This reading of Section 226(a)(8) is also consistent with its legislative history. Section 226(a)(8) was amended in 1978 by Assembly Bill 3363 to require an employer's address in order to allow migrant workers a means of accessing their W-2's. The September 7, 1978, enrolled bill report by the Department of Industrial Relations characterized the primary

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to
Strike                                        13.                      Case No.  2:20-cv-02110- PA-
                                                                                              (MRWx)

Second, Defendant wholly cured the alleged violation of Section 226(a)(8), extinguishing PAGA liability. To the extent that, Plaintiff contends that Defendants are liable for a violation of California Labor Code section 226(a)(8) because the wage statements they provided through February 21, 2020, listed an address for Sierracin/Sylmar Corporation of "One PPG Place, Pittsburgh, PA 15272," Defendants cured any defects. Holman Decl. ¶ 10; Jimenez Decl. ¶ 11. Under the PAGA, an employer is authorized to "cure" specified violations of itemized wage statement requirements, within 33 days of the date of the notice from the aggrieved employee. Cal. Lab. Code §§ 2699.3(c)(2)(A) and 2699.5. A "cure," in this context, signifies making the aggrieved employee whole and providing itemized wage statements for each pay period for the last three years.

As already discussed, on February 21, 2020, Sylmar re-issued wage statements listing Sylmar's actual California address, and not PPG's Pittsburg address to all non-exempt employees within a three-year period.  Holman Decl. ¶ 10; Jimenez Decl. ¶ 11. By "curing," Sylmar obviated all PAGA liability and Plaintiff's paystub claim under the PAGA based on Section 226(e)(8) must be stricken.

Third, to the extent Plaintiff seeks PAGA paystub penalties on a solely derivative basis, such penalties are not available based on meal and rest break premiums. *Betancourt v. OS Rest. Servs., LLC*, 49 Cal. App. 5th 240, 248 (2020), *reh'g denied* (May 18, 2020) ("We agree with *Ling* and *Naranjo* that a plaintiff is not entitled to recover penalties for waiting time and wage statement violations based on claims of nonprovision of rest or meal periods . . . ."); *Naranjo v. Spectrum Security Services, Inc.*, 40 Cal. App. 5th 444, 474 (2019), *as modified on denial of reh'g* (Oct. 10, 2019), *review granted & depublication denied*, Jan. 2, 2020, S258966; *Ling v. P.F. Chang's China Bistro*, 245 Cal. App. 4th 1242, 1261 (2016). Further, Plaintiff's PAGA claims

purpose of the bill as assisting "workers of multi employers in filing income tax forms. The August 25, 1978, Department of Finance enrolled bill report stated that the purpose of the address requirement was to "protect employees that do not receive W-2 statements of earnings from an employer and hence are unable to claim refunds due from the Federal and State Governments."

Defendants' MPA ISO Motion to
Strike

14.

Case No.  2:20-cv-02110- PA-
(MRWx)

for unpaid wages based on off-the-clock work and/or preemployment drug testing are unmanageable and must be stricken, as set forth below.

Thus, Plaintiff's wage statement claim must be stricken in its entirety as a matter of law because there is no underlying labor code violation entitling Plaintiff to penalties.

### D. Prospective Meal Break Waivers Are Not a Proper Basis for a Representative Claim and Plaintiff's PAGA Claim Must Be Stricken.

Plaintiff alleges that Defendant's use of "blanket, prospective meal period waivers" is in violation of Labor Code section 22, 226.7, 512.[6] However, Plaintiff's prospective meal period waiver theory misses the point – even if such a waiver was in place, to prevail under the PAGA, he still must show as to each and every allegedly aggrieved employee in every instance in question that the employee was actually deprived of the opportunity to a meal break as a result of the waiver. This is impossible for Plaintiff to do and his PAGA meal period claim thus cannot be proven with common proof. *See Sali v. Universal Health Servs. of Rancho Springs, Inc.*, 2015 WL 12656937, at *8 (C.D. Cal. June 3, 2015) (Gutierrez, J.), *reversed on other grounds*, 909 F.3d 996 (9th Cir. 2018); *see also Lampe*, 19 Cal. App. 5th at 840 (denying certification due to individualized issues where "every member of the class would be required to litigate numerous and substantial questions regarding his or her right to recover, which depended on the department the employee worked in, the shift she or he had, whether a meal waiver had been signed, and the circumstances leading up to any meal waiver").

Nothing in the wage orders requires that a meal period waiver be in writing.  IWC Wage Order 1-2001, Section 11(B). Rather, the meal periods within the applicable timeframes can be waived "by mutual consent of the employer and the employee…" *Id*. Even assuming that Plaintiff is right (which he is not) that prospective written meal period waivers are invalid, determining whether an employee voluntarily waived a

---

[6] Plaintiff's argument that Sylmar's use of "blanket, prospective meal period waivers" is unlawful is faulty and subject to summary adjudication as set forth in the concurrently filed Motion for Partial Summary Judgment, and incorporated here by reference.  See Motion, Section III.F.1. Again, this provides a separate basis to strike the PAGA claim because no underlying predicate violation of the Labor Code based on prospective meal period waivers exists.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    15.                    Case No.  2:20-cv-02110- PA-(MRWx)

given meal break would require actual evidence that the employee did not consent to waive the meal period. Each and every instance where an employee did not take a meal during a "waivable" meal period would still need to be individually investigated to determine *why* the employee did not take the meal, *e.g.*, because the employee chose not to, versus the employee was not provided the meal break. In other words, there is no evidence that Defendants actually failed to provide a meal break to an employee working between five and six hours and ten and twelve hours. Plaintiff presents no suggestion for how exactly he plans to prove this on a representative basis.[7] Additionally, Defendant does not store the meal period waivers centrally and investigation as to whether an individual allegedly aggrieved employee signed a written waiver presents another individualized issue that cannot be resolved on a representative basis. Holman Decl. ¶ 5; Holman Depo. 83:3-17; Jimenez Decl. ¶ 10, Exh. I, Errata Sheet for the 30(b)(6) Deposition Transcript of Paula Holman ("Holman Errata Sheet"), Correction Number 21. For all these reasons, the Meal Period PAGA claim cannot be sustained.

Proof of this claim would be unmanageable, and could not be done with statistical or survey evidence but only with detailed inquires about each employee claimed to have done so and his or her manager's knowledge thereof.

### E. Plaintiff's Preemployment Drug Testing Expense Reimbursement And Unpaid Wage Claims Are Inherently Unmanageable.

Plaintiff's FAC alleges that Defendant violated Labor Code sections 222.5[8] and 2802 when it failed to compensate Plaintiff for the time spent travelling to and from and

---

[7] The issue is exacerbated by Plaintiff's framing based upon shift length, rather than based upon allegedly aggrieved employees who have actually executed written waivers. As stated, the allegedly aggrieved employees includes people, like Plaintiff, who never executed a waiver, which is not tenable. Plaintiff likely did so because he recognizes that he has no plan or method to determine who actually signed a waiver form. The waivers are not stored in a centralized manner. Holman Decl., ¶ 5. Therefore, determining who signed such a waiver will require an individualized search and investigation for each employee. *Id.*

[8] Plaintiff suggests that, under Labor Code § 222.5, Defendant would be required to reimburse the mileage costs. Yet, there is no private right of action in a 222.5 claim and the "costs" associated with 222.5 are defined narrowly and do not include compensation for the time or mileage associated with pre-employment drug test. *Brum v. MarketSource, Inc.*, 2017 WL 4883376 (E.D. Cal., Oct. 27, 2017).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike

16.

Case No.  2:20-cv-02110- PA-(MRWx)

undergoing preemployment drug testing and failed to reimburse Plaintiff for the costs of the same. FAC, ¶¶ 125(i), 129-130.[9] However, Plaintiff's PAGA claims based on this theory are hopelessly unmanageable and must be stricken.

Wages are not owed unless an employment relationship exists. *Post v. Palo/Haklar & Assoc.*, 23 Cal. 4th 942, 947 (2000). There is "no magic formula for determining whether [an] employment relationship exists. The prevailing view is to consider the totality of the circumstances, reflecting upon the nature of the work relationship between the parties, and placing emphasis on the control exercised by the employer over the employee's performance of employment duties." *Bradley v. Department of Corrections & Rehabilitation*, 158 Cal. App. 4th 1612, 1626 (2008); *see also S. G. Borello & Sons, Inc. v. Department of Industrial Relations*, 48 Cal. 3d 341 (1989). "[T]hat the prospective employer allows the prospective employee to interview for employment cannot mean that that prospective employer has suffered or permitted the individual to work such that she is an employee entitled to compensation." *Gunawan v. Howroyd-Wright Employment Agency*, 997 F. Supp. 2d 1058, 1065 (C.D. Cal. 2014); *see also Sullivan v. Kelly Services, Inc.*, 2009 WL 3353300, *4 (N.D. Cal. 2009) (acknowledging that any employee's initial interview with a prospective employer is independently scheduled and on the employee's own behalf.) Similarly, Labor Code section 2802(a) requires an employer to reimburse employees for work related expenses. By the statute's express terms, an employer only has a duty to reimburse expenses incurred by its *employees*. There is no case law that establishes that the requirements of an application process transmute prospective hires into employees across the board.

Even assuming Plaintiff could advance a viable legal theory, this claim is wholly unmanageable as determining whether job applicants and prospective hires were

---

[9] As set forth in Defendant's concurrently filed Motion for Partial Summary Judgment and incorporated herein by reference, Plaintiff's legal theory is not viable as no employment relationship existed at the time of the drug testing. Motion, Section III.F.2. For this reason alone, Plaintiff's expense reimbursement and unpaid wage claims under the PAGA based upon his preemployment drug testing theory should be stricken. Further, Plaintiff lacks standing to pursue this claim, providing an additional basis to strike these claims. Motion, Section III.F.2.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    17.                    Case No.  2:20-cv-02110- PA-(MRWx)

actually employees due to the control exercised by the employer at the time of their drug tests requires multiple layers of individualized inquiries rendering the claim entirely unmanageable. This is because each allegedly aggrieved employee must first establish a "meeting of the minds" on any contractual terms, and this inquiry fundamentally depends on the specific facts and totality of circumstances, requiring an individual inquiry relevant to a determination of the "actual understanding of the parties." *Foley v. Interactive Data Corp*., 47 Cal. 3d 654, 681 (1988); *Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 337 (2000) Rest. 2d Cont. ¶ 33(2). The Court will have to undergo a fact-specific determination regarding what people were each told, as to when, where and by whom the tests would be conducted –as the witnesses' experiences vary considerably. The circumstances surrounding each and every allegedly aggrieved employees would need to be examined to determine the circumstances surrounding their application process.

In *Brum v. MarketSource, Inc*., the defendants sent newly hired employees an email stating, "Congratulations on your new position with the MarketSource team!" *Id*. at *2. But the email also provided that all new hires were required to undergo mandatory drug testing as a condition of employment. *Id*. The *Brum* court found that the fact that a prospective employer picked the time, date, location and the scope of drug test required for one to commence employment was insufficient control to establish an employment relationship. *Id*. at *4. Here, Plaintiff cannot show any uniform policy or practice as to any particular script, form letter or correspondence regarding preemployment drug testing. Holman Decl., ¶ 9. Given the absence of any common proof, Plaintiff would need to prove that in each alleged aggrieved employees' instances, an employment relationship was formed.

During the application and drug testing process, however, Defendant has no authority to transfer, promote, discipline, or discharge the applicants *because they have not yet been hired*. Holman Decl., ¶ 9. Applicants seeking a job at the Sylmar plant must complete the interview and application process in order to gain employment. *Id*.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike

18.

Case No.  2:20-cv-02110- PA-(MRWx)

Defendant has no authority to establish when an applicant will come in to begin the application process and applicants are free to leave or decline the drug test at any time. *Id*. Defendant has no authority to establish the applicant's schedule. *Id*. Thus, none of the factors that point to an employment relationship are present. To posit an employment relationship during the process designed to allow the parties to decide whether or not an employment relationship should be entered into is absurd.

Here, Plaintiff himself admits that he understood he did not enter into an employment relationship with Defendant until the drug test precondition was met. Castro Depo., p. 97:1-7, 23-25 ("And this whole job offer was contingent that I pass those two things -- that I was physically fit and I was not using any illegal drugs. . . . If I didn't pass the physical test or I tested positive for any illicit drugs, this job offer would go away."). It follows that the totality of the circumstances makes clear that no employment relationship existed until all the preconditions were met. Thus, Plaintiff is not owed wages or business expense reimbursements for the preemployment drug testing and his representative PAGA claim should be struck.[10]

### F.     Plaintiff's Cell Phone Reimbursement Claim Is Not Subject to Common Proof.

While Plaintiff seeks to represent hundreds of employees across California on his expense reimbursement claim, he can present no evidence that any other allegedly aggrieved employee experienced the same issues he asserts as there is no common policy that would support representative litigation on this claim. Plaintiff testified that he would use his personal cell phone when he was "trying to be a nice guy and let my supervisor know 'Hey, I got this done. I didn't get this done. We had a problem with the machine' . . . I was just trying to be a good person, a good worker." Pltf. Depo., p. 201:1-10. However, he also admitted he could have completed his reporting requirements via email during working hours, but that he was "just tired" and "would forget" until he arrived home and it would "dawn on" him to report notes to his

---

[10]  Additionally, Plaintiff cannot assert a PAGA claim based upon this theory of liability because he was hired long before the start of the PAGA period.

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to
Strike                                                          19.                Case No.  2:20-cv-02110- PA-
(MRWx)

1    supervisor. Castro Depo., p. 244:3-19. He further admitted that he was not required to
2    use his personal cell phone to report updates to his supervisor after hours (Castro Depo.,
3    p. 244:20-23), that he was not aware of anyone else with complaints about using their
4    personal cell phones without reimbursement (Castro Depo., p. 246:15-21), and that he
5    himself did not feel that he was not reimbursed personal business expenses (Castro
6    Depo., p. 52:3-5). Thus, Plaintiff has no idea whether other employees allegedly used
7    their personal cell phones for business purposes. Without evidence of a common policy
8    that would allow him to represent other employees of in connection with his
9    representative PAGA claim, a trial on Plaintiff's representative cell phone
10   reimbursement PAGA claim will be unmanageable and inappropriately require
11   individualized inquiries.

12       Additionally, to establish an entitlement to reimbursement under Section 2802, a
13   plaintiff must demonstrate not only that an expense was incurred in direct discharge of
14   his/her duties, but that the expense was "necessary." Cal. Lab. Code §2802; *Grissom v.*
15   *Vons Companies, Inc.*, 1 Cal. App. 4th 52, 58 (1991). Determining whether an
16   expenditure was "necessary" requires an individualized inquiry into what an employee
17   was told or instructed and what was reasonable under the circumstances. *Grissom*, 1
18   Cal.App.4th at 58-59; *Gattuso v. Harte-Hanks Shoppers, Inc.,* 42 Cal. 4th 554, 568
19   (2007). Ultimately, to establish that personal use of a cell phone was necessary, Plaintiff
20   must prove that Defendant *required* employees to use personal cell phones for business
21   purposes – a fact that cannot manageably be established on a groupwide basis. *Morgan*
22   *v. Wet Seal, Inc*., 210 Cal. App. 4th 1341, 1355, 1362 (2012)(the "central liability
23   question" is whether the plaintiffs were "required" to incur expenses in connection with
24   their work).

25       This logic has been followed in several recent Central District cases. In *Pyara v.*
26   *Sysco Corp*., 2017 WL 928715, *2 (E.D. Cal. Mar. 9, 2017), the court denied the
27   plaintiff's motion to certify a Fed. R. Civ. P. 23 subclass claiming failure to reimburse
28   personal cell phone expenses. In reaching that conclusion, the court stated that an

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike          20.          Case No.  2:20-cv-02110- PA-(MRWx)

employer "must reimburse an employee for the reasonable expense *of the required use* of a personal cell phone." *Id*. at *1 (emphasis added). It then concluded that "[t]his element of Plaintiff's claim will be based on individualized facts and is not well suited to class disposition without evidence of a policy or set of facts *that clearly required or compelled the class members to use their personal phones*." *Id*. at *2 (emphasis added). Along the same lines, in *Klune v. Ashley Furniture Industries, Inc*., 2015 WL 1540906, *9 (C.D. Cal. Apr. 3, 2015), the court granted summary judgment on the plaintiff's expense reimbursement claims where the plaintiff claimed she incurred expenses "related to achieving 'necessary' minimum sales standards," including "use of her cell phone for customer calls . . ." The court ruled that the plaintiff offered "no evidence giving rise to a genuine issue whether these expenditures were necessary. Evidence that she was encouraged to advertise the business does not demonstrate *that she was required to do so*." *Id*. The same was true in *Dugan v. Ashley Furniture Industries Inc*., 2016 WL 9173459, *4 (C.D. Cal. Nov. 29, 2016), where the court denied the plaintiff's motion for certification of a class alleging failure to reimburse cell phone expenses, finding that the plaintiff's proposed evidence would not resolve the issue of necessity. The court held, "the predominant issue is whether Sales Associates needed to use their personal cell phones to perform their duties," which will require individualized inquiries. *Id*. at *5.

Here, the result is no different when analyzing the manageability of a PAGA representative action. The declarations submitted by Defendants make it clear that an individualized inquiry would need to be made across the departments and hundreds of employees during the relevant time period of the PAGA claim regarding: (1) whether the employee used their personal cell phone for business purposes; (2) whether anyone in management told each employee that use of their personal cell phone was required or whether they decided to use these items for their own benefit and convenience; and (3) whether each employee was denied reimbursement for any such expenses that they

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    21.                    Case No.  2:20-cv-02110- PA-
(MRWx)

incurred of which Defendant was aware.[11] There is no way to determine this without countless individualized inquiries. Indeed, courts have specifically found that PAGA claims for expense reimbursement such as this one are "nothing short of unmanageable" for these very reasons. *Raphael,* 2015 U.S. Dist. LEXIS 130532 at *7 (gathering inquiries for plaintiff's PAGA claim for reimbursement of "tools, mileage, and the use of their personal cell phone to carry out their job duties" for all aggrieved employees "would be nothing short of unmanageable"); *Ortiz,* 2014 U.S. Dist. LEXIS 36833 at *14-15 (striking PAGA claim because "Plaintiffs' unreimbursed mileage claim would require individualized inquiries about whether the claimed expenses were necessary and incurred in direct consequence of the discharge of the employee's duties, whether the employee actually sought reimbursement from the defendants for the expenses, and whether the defendants reimbursed the employee for the expense"). An employee-by-employee individualized inquiry creates extensive unmanageability in trying Plaintiff's PAGA claims on a representative basis. Thus, Plaintiff's representative PAGA claim should be struck.

### G.    Plaintiff's Off-The-Clock Unpaid Wage And Overtime PAGA Claims Are Similarly Unmanageable And Must Be Stricken.

Plaintiff theorizes that he and allegedly aggrieved employees are owed unpaid wages, including overtime wages, based on a regular practice of communicating with employees about work-related matters off-the-clock and based on a culture where "everybody helped everybody." *See* Court's Minute Order, Dkt. No. 46**,** pp. 6-7. However, Plaintiff cannot pursue these highly individualized claims on a PAGA representative basis for the same reasons that this Court declined to certify the off-the-clock subclass. *Id.*

The question of whether or not an individual employee communicated with other employees about work-related matters while off-the-clock turns on each class members'

---

[11] Alatorre Decl. ¶ 12 (not required to use cell phone, sometimes I do for my convenience); Barillas Decl. ¶ 15 (I leave my cell phone in my locker during work, not required to use it for work); Cortes Decl. ¶ 14 (not required to use cell phone, sometimes I do for my convenience); Galeana Decl. ¶ 17 (same); Perez Decl. ¶ 20 (same).

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    22.                    Case No.  2:20-cv-02110- PA-(MRWx)

1   individual habits and practices and the processes of their respective departments and
2   supervisors. Additionally, to the extent an employee worked off the clock, as described
3   above, they are able to report the same to their supervisor in order to get paid and it is
4   very possible this did in fact occur. Castro Depo. 129:2-11; Barillas Decl. ¶ 13; Cortes
5   Decl. ¶ 6; Galeana Decl. ¶ 8; Perez Decl. ¶ 17. Where liability to a particular employee
6   turns on oral statements and understandings, certification is invariably denied. *Hamwi*
7   *v. Citinational-Buckeye Inv. Co.*, 72 Cal. App. 3d 462, 473 (1977); *Occidential Land,*
8   *Inc. v. Superior Court*, 18 Cal. 3d 355, 361. As should follow here with the question of
9   manageability of a representative claim, where each individual's understanding would
10  have to be examined through a series of mini-trials, including the review of each every
11  putative class members' time records for revisions and investigations into why those
12  edits were made, class treatment would be rendered ineffective and inefficient. *Linder*
13  *v. Thrifty Oil, Co.*, 23 Cal. 4th 429, 435 (2000). Further, despite efforts to manufacture
14  a "practice" because Defendants created a culture where "everybody helped everybody"
15  and somehow thereby created an "affirmative policy requiring employees to
16  communicate with supervisors and co-workers while off the clock," Plaintiff made it
17  clear that he knew he was not required to talk to supervisors prior to clocking in (Castro
18  Depo. 141:7-10) and that nobody told him he was required to communicate with
19  coworkers or perform work after clocking out (Castro Depo. 169:18-20, 171:8-11,
20  244:16-23). Plaintiff also specifically testified that while they were encouraged to help
21  each other out, he was never told to do so while off the clock, rather that was his own
22  interpretation. Castro Depo. 170:2-20. Plaintiff also admitted he was aware of the
23  Sylmar policy that he is only supposed to perform work while on the clock and that if
24  he forgot to clock in, he could just let his supervisor know and it would get fixed. Castro
25  Depo. 173:12-14, 129:2-9.

26          Other declarants also indicated they did not work off the clock. Cortes Decl. ¶
27  12; Perez Decl. ¶ 19; Barillas Decl. ¶ 14 ("A few times, another employee has asked me
28  a question after I've clocked out. ***I just told him/her that I had already clocked out*** and

Defendants' MPA ISO Motion to Strike
23.
Case No.  2:20-cv-02110- PA-(MRWx)

the employee went to ask another person who was on shift. I have never gotten in trouble for not working when off the clock."); Galeana ¶ 6, 14-15 ("I remember one time where a supervisor wanted to ask me something during a meal break, but I do not think they knew I was on a meal break, and ***I let them know I was on my meal break and the conversation did not go further***."); Alatorre Decl. ¶ 10-11.

In sum, even if there was a "culture" of "everybody helping everybody," that is a far cry from a uniform policy or systematic practice where off-the-clock work is required as a regular basis or regular feature of the job which would make this claim subject to common proof. In light of the foregoing, there is simply no valid basis for the manageability of this claim on a representative basis and it must be struck.

### H. Plaintiff's Remaining PAGA Claims Are Similarly Unmanageable And Must Be Stricken.

With respect to Plaintiff's remaining claims for failure to maintain payroll records, failure to pay all wages earned during employment under Labor Code section 204 and failure to provide personal protective equipment ("PPE"), Plaintiff has articulated no uniform policy or practice and has no plan to be able to try them on a representative basis and they must also be stricken. Those seeking to bring PAGA claims must allege facts and theories of liabilities in support of those claims and Plaintiff has failed to do so here. These alleged violations, even if true, have nothing to do with any corporate policy identified by Plaintiff. Rather, they are necessarily tied to each individual employee's position and individual experience.  Proving up these myriad individualized factual disputes will consume substantial court time and are inherently unmanageable and thus must be stricken.

## IV.  CONCLUSION

It is a near certainty that Plaintiff's representative claims will devolve into a mixed bag of individualized inquiries far too burdensome for any court to manageably assess at trial. If Plaintiff's representative action is allowed to proceed any further, the Court will be left with no choice but to examine *each and every* alleged "aggrieved employee's" job title, job duties, hours of work, department supervisor practices, and

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA  90071
213.443.4300

Defendants' MPA ISO Motion to Strike                    24.                    Case No.  2:20-cv-02110- PA-(MRWx)

work schedule, as well as *each and every de facto* policy or practice applicable to that employee to determine whether a "violation" under PAGA actually occurred. In short, nothing relating to Plaintiff's PAGA action resembles a cohesive or manageable claim in the least. Therefore, determining liability on a representative basis will be unmanageable and these claims should be stricken. For all the foregoing reasons, Defendant respectfully requests that the Court grant its Motion to Strike the PAGA representative allegations.

Dated: December 7, 2020

/s/*Carlos Jimenez*
CARLOS JIMENEZ
MAGGY ATHANASIOUS
LINDA N. BOLLINGER
LITTLER MENDELSON, P.C.
Attorneys for Defendants
PPG INDUSTRIES INC.,
SIERRACIN/SYLMAR
CORPORATION, and SIERRACIN
CORPORATION

4816-9526-6003.5 034801.2214

LITTLER MENDELSON, P.C.
633 West 5th Street
63rd Floor
Los Angeles, CA 90071
213.443.4300

Defendants' MPA ISO Motion to Strike

25.

Case No.  2:20-cv-02110- PA-(MRWx)