Melissa Grant (SBN 205633)
Melissa.Grant@capstonelawyers.com
Bevin Allen Pike (SBN 221936)
Bevin.Pike@capstonelawyers.com
Orlando Villalba (SBN 232165)
Orlando.Villalba@capstonelawyers.com
Trisha Monesi (SBN 303512)
Trisha.Monesi@capstonelawyers.com
Capstone Law APC
1875 Century Park East, Suite 1000
Los Angeles, California 90067
Telephone:   (310) 556-4811
Facsimile:   (310) 943-0396

Attorneys for Plaintiff Rogelio Castro

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGELIO CASTRO, individually, and on behalf of other members of the general public similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>PPG INDUSTRIES, INC., a Pennsylvania corporation; SIERRACIN/SYLMAR CORPORATION, a California corporation; SIERRACIN CORPORATION, a Delaware corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No.:  2:20-cv-02110 PA (MRWx)<br><br>**CLASS ACTION**<br><br>**PLAINTIFF ROGELIO CASTRO'S RESPONSE TO DEFEDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>Complaint Filed: January 31, 2020 |

Pursuant to this Court's Civil Trial Scheduling Order (Dkt. No. 22), Plaintiff Rogelio Castro ("Plaintiff") hereby submits his Response to Defendants PPG Industries, Inc.; Sierracin/Sylmar Corporation; and Sierracin Corporation ("Defendants") Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Partial Summary Judgment, and Additional Material Facts:[1]

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| **1.** Since at least January 31, 2016, Sylmar maintained rest period policies providing for a paid 15 minute rest period for every four hours of work or major fraction thereof, meaning one 15 minute rest period for shifts that are three and a half hours or more, and a second 15 minute rest period for shifts that are six hours or more, and so on. | Plaintiff's Response: **Undisputed** <br><br> Defendants' Evidence: Declaration of Carlos Jimenez in Support of Motion for Partial Summary Judgement ("Jimenez Decl.") ¶ 3, Exh. B, Deposition of Paula Holman ("Holman Depo.") 49:8-18, Exh. 4 |
| **2.** Sylmar's rest break policies, as well as the Employee Handbook (along with California supplements including rest break policies) are generally distributed during new hire orientation | Plaintiff's Response: **Disputed—the statement is not supported by the evidence cited.** The evidence cited by Defendants does not support the alleged fact. Defendants' cite no evidence |

---

[1] Defendants' Statement of Uncontroverted Facts and Conclusions of Law in Support of Plaintiff's Motion for Partial Summary Judgment sets forth a series of arguments under the guise of "Conclusions of Law" which are in violation of this Court's prohibition against arguments in the statement of facts. See Civil Trial Order (Dkt. No. 22) at § II(A)3. Plaintiff has set forth his arguments against Defendants' arguments in his Memorandum of Points and Authorities in Opposition to Defendants' Motion for Partial Summary Judgment, and thus does not address Defendants' purported "Conclusions of Law" here so as not to violate the Court's Civil Trial Order.

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| and accessible to employees on the Company's intranet. | establishing how policies were distributed.  The evidence cited is only the meal and rest break policy, nothing about how it was distributed or made available.<br><br>Defendants' Evidence:<br>Holman Depo. 49:8-18, Exh. 4 |
| **3.**    Although Sylmar's Rest Break policy states Employees may not leave work premises during a rest break, in practice, employees are permitted to (and do) take their rest breaks in a wide variety of areas, including outside/on the grounds of the Plant. | Plaintiff's Response:<br>**Partially disputed as to the statement that employees "are permitted to (and do) take their rest breaks" off the Defendants' premises.  In addition, the statement is not supported by the evidence cited by Defendants.**<br>Defendants' evidence does not support the alleged fact.  None of the evidence establishes that employees were permitted to, or even occasionally did, take rest breaks off the work premises. In fact, Defendants cut off their citation of Rogelio Castro's testimony where he states the opposite:<br>    Q:   Anybody ever tell you you can't go outside to smoke? |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | A:  After the fact, yes. Declaration of Melissa Grant in Opposition to Defendants' Motion for Partial Summary Judgment ("Grant Dec."), Exh A (Deposition of Rogelio Castro ["Castro Tr."] at 221:23-25. And the declarations cited by Defendants in no way contend or establish that employees were permitted to leave the work premises during rest breaks.  The Barillas declaration states that he would go outside to the common grounds on the work premises for his rest breaks, not leave the premises; nor does it state that he was permitted to. (Jimenez Decl. Ex. E ¶¶ 9, 11.).  The Perez declaration similarly states that he saw employees smoke outside on their rest breaks, not leave the premises; nor does it state that they were permitted to. (Jimenez Decl. Ex. H ¶ 15).  And the Galeana declaration states that he never attempted to leave the work premises and did not remember being told whether he could or could not (Jimenez Decl. Ex. G ¶ 13); in fact, Galeana |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | states that he would refer to the handbook (i.e. Defendants' policies) if he had a question about rest break procedures—yet, Defendants' rest break policy states that employees cannot leave the premises during rest breaks. (Jimenez Decl. Ex. G ¶ 12). |

Defendants' Evidence:

Jimenez Decl. ¶ 2, Exh. A, Deposition of Rogelio Castro ("Castro Depo.") 221:11-22; Jimenez Decl. ¶ 9, Exh. H Declaration of Jose Perez ("Perez Decl.") ¶ 16; Jimenez Decl. ¶ 6, Exh. E Declaration of Jose Barillas ("Barillas Decl.") ¶11; Jimenez Decl. ¶ 8, Exh. G Declaration of Luis Galeana ("Galeana Decl.") ¶ 13.

Plaintiff's Evidence and Objections to Defendants' Evidence:

Grant Dec., Exh. A (Castro Tr.) at 57:13-18; 221:11-222:7, 225:15-226:7; Declaration of Rogelio Castro in Opposition to Defendants' Motion for Partial Summary Judgment ("Castro Dec.") at ¶¶ 5-10.

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | Also, Plaintiff objects to Jimenez Declaration Exhibit E (Barillas Declaration) ¶ 11 and Exhibit H (Perez Declaration) ¶ 16 on the grounds that they are irrelevant. Plaintiff objects to Jimenez Declaration Exhibit G (Galeana Declaration) ¶ 13 on the grounds that it is speculation |
| **4.**     Paid rest breaks are not "on call," as there is no practice requiring class members to carry, monitor or answer a communication device or to otherwise report for duty during their paid rest breaks. | <u>Plaintiff's Response</u>: **Disputed – employees were required to be available for work during rest breaks.** <br><br> <u>Defendants' Evidence</u>: Holman Decl. ¶ 4; Jimenez Decl. ¶ 4, Exh. C, Declaration of George Alatorre ("Alatorre Decl.") ¶ 10; Barillas Decl. ¶ 11; Jimenez Decl. ¶ 7, Exh. F, Declaration of Francisco Rico Cortes ("Cortes Decl.") ¶ 11; Galeana Decl. ¶ 14; Perez Decl. ¶ 18. <br><br> <u>Plaintiff's Evidence</u>: |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | Grant Dec., Exh. C (Deposition of Paula Holman ["Holman Tr."]), Exs. 4, 20; Castro Dec. at ¶¶ 5-10. |
| **5.**     To the extent any non-exempt employee believes he or she has been precluded or prevented from taking a rest break pursuant to Sylmar's policies, he or she can complete a Meal Period and Rest Break Premium Request Form and submit it to his/her manager by the end of the pay period. If there is a reported issue with any break, the supervisor or manager is responsible for following up with the individual employee to determine a solution. | <u>Plaintiff's Response</u>: **Disputed—not supported by evidence and immaterial insofar as, by law, employees cannot be required to submit a premium request form to be paid a premium to which they are already entitled.** The evidence cited by Defendants does not support the alleged fact.   The alleged fact pertains to rest break premiums, but the evidence cited refers only to meal breaks premiums. <br><br> <u>Defendants' Evidence</u>: Holman Depo. 57:11-58:5; 58:6-59:9 |
| **6.**     Plaintiff's wage statement provided through February 21, 2020, listed an address for Sierracin/Sylmar Corporation of "One PPG Place, Pittsburgh, PA 15272," not the address | <u>Plaintiff's Response</u>: **Undisputed** <br><br> <u>Defendants' Evidence</u>: Holman Decl. ¶ 6. |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| of the Sylmar facility in California at which the employees reported for work. | |
| **7.** The Pennsylvania address is a valid address for Sierracin/Sylmar Corporation's corporate parent, which handles human resources and payroll for its California subsidiary from the Pittsburgh address. | Plaintiff's Response: **Undisputed that the address is not Sierracin/Sylmar's address and is instead the address of a separate corporate parent entity; Disputed that use of the different address is "valid" and unsupported by evidence of same.** The evidence cited by Defendants does not support the fact alleged that use of a different address is "valid". The witness, a non-lawyer, is making an unsupported legal determination. The witness also fails to provide any facts or basis to support the claim that use of an incorrect address is "valid". Defendants' Evidence: Holman Decl. ¶ 6. |
| **8.** Plaintiff admitted he suffered no injury and was not harmed or damaged by the information on his wage | Plaintiff's Response: **Disputed—Plaintiff never made any such admission.** |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| statements and that he was aware that his employer's address was always located in Sylmar, where he worked throughout his employment. | The evidence cited by Defendants does not support the fact alleged that "Plaintiff admitted he suffered no injury and was not harmed or damaged by the information on his wage statements." Plaintiff has stated that he suffered injury from the inaccurate wage statements, but Plaintiff was not cognizant of the injury until he learned the wage statements were inaccurate. The testimony cited by Defendants refers to Plaintiff's cognizance of his injury prior to knowing of their inaccuracy, not his current evaluation of his injury. (Jimenez Decl. Ex. A at 238:10–12 ("Did you ever feel harmed or damaged by the information on your wage statement?")).<br><br>Defendants' Evidence:<br>Castro Depo. 229:9-13, 238:10-12, 239:5-9<br><br>Plaintiff's Evidence:<br>Grant Dec., Exh. A (Castro Tr.) at 228:19-229:3. |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND
CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | |
| **9.**     Other employees similarly knew where to report to work, who to contact, and how to contact human resources to obtain copies of their pay records. | <u>Plaintiff's Response:</u><br>**Disputed as unsupported by evidence and otherwise immaterial**—accurate identification of employer address is necessary for employee needs beyond just knowing "where to report to work, who to contact, and how to contact human resources to obtain copies of their pay records". Defendants' evidence does not address any of these additional employee needs.<br><br><u>Defendants' Evidence:</u><br>Cortes Decl. ¶ 17; Perez Decl. ¶ 22; Barillas Decl. ¶¶ 21-22; Galeana Decl. ¶ 20; Alatorre Decl. ¶ 15 |
| **10.**     On February 21, 2020, Sylmar re-issued wage statements listing Sylmar's actual California address, and not PPG's Pittsburg address to all non-exempt employees within a three-year period. | <u>Plaintiff's Response:</u><br>**Disputed and Immaterial**<br>The non-objectionable evidence cited by Defendants does not support the fact alleged.     Without     Jimenez's objectionable testimony, there is no testimony supporting the alleged fact because   Holman   only   stated   that |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | subsequent to February 21, 2020, Sylmar began providing wage statements with the corrected address — she did not state that Sylmar re-issued wage statements to all non-exempt employees within a three-year period.<br><br>In any event, this fact goes to issues beyond Plaintiff's claims in this case.<br><br>Defendants' Evidence:<br>Jimenez Decl. ¶ 11; Holman Decl. ¶ 6.<br><br>Plaintiff's Evidence and Objections to Defendants' Evidence:<br>Plaintiff objects to the citation to the Jimenez declaration based on lack of foundation and hearsay. |
| **11.**   As of August 28, 2020, Sylmar obtained signed *Pick Up Stix* settlement agreements and releases from approximately 225 class members. These agreements release all of the claims at issue in this case. | Plaintiff's Response:<br>**Undisputed that Sylmar attempted to secure settlements and releases from current employees; Disputed as to the validity of these settlements and releases.** |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | Defendants' Evidence: Jimenez Decl. ¶ 12, Exh. J. Plaintiff's Evidence and Objections to Defendants' Evidence: Declaration of Melissa Grant In Support Of Motion For Order (1) Invalidating Purported Settlements; (2) Prohibiting Defendants From Further Ex Parte Communications With Putative Class Members Re Claims; (3) Ordering Defendants To Send A Corrective Notice; And (4) Requiring Defendants To Identify The Class Members Who They Have Contacted Re: Settlement ("Grant Dec. re Motion to Invalidate") (Dkt. No. 67-1), Ex. A (Letter), Ex. B (Settlement Agreement), Ex. C (Declaration of Cherilyn Clardy Thomas) at ¶¶ 3-6, Ex. D (Declaration of Walter Olmedo) at ¶¶ 3-7. Plaintiff also objects to Jimenez Declaration paragraph 12 based on lack of foundation and hearsay. |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| **12.** Pursuant to these Agreements, these individuals agreed to release "any and all claims, known and unknown, for unpaid wages, meal and rest break premiums, unreimbursed business expenses, penalties, interests, or other amounts." | Plaintiff's Response: <br><br> **Undisputed that Sylmar attempted to secure settlements and releases from current employees or that the purported releases contain the language quoted; Disputed as to the validity of these settlements and releases.** <br><br> Defendants' Evidence: <br> Jimenez Decl. ¶ 12, Exh. J . <br><br> Plaintiff's Evidence and Objections to Defendants' Evidence: <br> Grant Dec. re Motion to Invalidate (Dkt. No. 67-1), Ex. A (Letter), Ex. B (Settlement Agreement), Ex. C (Declaration of Cherilyn Clardy Thomas) at ¶¶ 3-6, Ex. D (Declaration of Walter Olmedo) at ¶¶ 3-7. <br><br> Plaintiff also objects to Jimenez Declaration paragraph 12 based on lack of foundation and hearsay. |
| **13.** The release "covers the entire period of Employee's employment with the Company up to the date that | Plaintiff's Response: <br><br> **Undisputed that Sylmar attempted to secure settlements and releases from** |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| Employee signs and dates this Agreement." | **current employees or that the purported releases contain the language quoted; Disputed as to the validity of these settlements and releases.**<br><br>Defendants' Evidence:<br>Jimenez Decl. ¶ 12, Exh. J .<br><br>Plaintiff's Evidence and Objections to Defendants' Evidence:<br>Grant Dec. re Motion to Invalidate (Dkt. No. 67-1), Ex. A (Letter), Ex. B (Settlement Agreement), Ex. C (Declaration of Cherilyn Clardy Thomas) at ¶¶ 3-6, Ex. D (Declaration of Walter Olmedo) at ¶¶ 3-7.<br><br>Plaintiff also objects to Jimenez Declaration paragraph 12 based on lack of foundation and hearsay. |
| **14.**   The release further specifies that it includes: "claims for minimum and overtime wages, missed meal and rest breaks, unreimbursed business expenses, damages or penalties | Plaintiff's Response:<br>**Undisputed that Sylmar attempted to secure settlements and releases from current employees or that the purported releases contain the** |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| associated with any recordkeeping, time of pay, or other violations under the California Labor Code, the Wage Orders, including any claims based on incomplete or inaccurate payroll records, paystubs, or wage statements. | **language quoted; Disputed as to the validity of these settlements and releases.**<br><br>Defendants' Evidence:<br>Jimenez Decl. ¶ 12, Exh. J .<br><br>Plaintiff's Evidence and Objections to Defendants' Evidence:<br>Grant Dec. re Motion to Invalidate (Dkt. No. 67-1), Ex. A (Letter), Ex. B (Settlement Agreement), Ex. C (Declaration of Cherilyn Clardy Thomas) at ¶¶ 3-6, Ex. D (Declaration of Walter Olmedo) at ¶¶ 3-7.<br><br>Plaintiff also objects to Jimenez Declaration paragraph 12 based on lack of foundation and hearsay. |
| **15.** There is no evidence Sylmar utilized a "blanket" waiver that all employees were required to sign. | Plaintiff's Response:<br>**Disputed**<br>The evidence cited by Defendants does not support the fact alleged. This alleged fact is compound and contains two contentions: (1) Sylmar does not use a "blanket" waiver, and (2) Sylmar |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | does not require employees sign a waiver. The testimony cited by Defendants does not support the first contention, that Sylmar does not use a "blanket" waiver; it only relates to the second contention, that Sylmar allegedly does not require the waiver be signed.<br><br>Defendants' Evidence:<br>Holman Decl. ¶ 5.<br><br>Plaintiff's Evidence and Objections to Defendants' Evidence:<br>(Grant Decl., Ex. C [Holman Tr.] at 64:11-65:22, 85:25-86:7, Ex. 21.)<br><br>Plaintiff also objects to the Holman Declaration paragraph 5 based on lack of foundation and speculation. |
| **16.** The waivers are voluntary, and employees are informed that they are free to rescind the waivers at any time. | Plaintiff's Response:<br>**Disputed—waivers cannot be voluntarily waived before ever incurred, and Defendants fail to support this fact with evidence.** |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | The evidence cited by Defendants does not support the fact alleged.     In Plaintiff's testimony, he is describing the contents of Defendants' job offer letter that said his employment was contingent on passing a drug test. (Jimenez Decl, Ex. A at 97:1–25.)  He did not testify that, in fact, his employment relationship did not begin until after the drug test.  Plaintiff has, instead, stated the opposite — that his employment relationship pre-existed the required drug test.

Defendants' Evidence:
Holman Decl. ¶ 5; Holman Depo., 64:5 – 65:11, Exh. 21, 84:2-15; and Jimenez Decl. ¶ 10, Exh. I, Errata Sheet for the 30(b)(6) Deposition Transcript of Paula Holman ("Holman Errata Sheet"), Correction Nos. 18, 27, and Exhs. B, C with documents bate stamped "SYL(CASTRO)001002" to "SYL(CASTRO)001007"

Plaintiff's Evidence and Objections to Defendants' Evidence: |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | Plaintiff objects to the Holman Declaration paragraph 5 based on lack of foundation, speculation, and ambiguity. |
| **17.** Sylmar does not store the meal period waivers centrally and investigation as to whether an employee signed a written waiver must be investigated on behalf of each employee individually. | Plaintiff's Response: **Disputed as to implied conclusion that determination of employees who signed waivers is not reasonably possible, as this is within the scope of Plaintiff's expert's survey in this case.** <br><br> Defendants' Evidence: Holman Decl. ¶ 5; Holman Depo. 83:3-17; Holman Errata Sheet, Correction Number 21. <br><br> Plaintiff's Evidence: Grant Dec., Ex. G (Declaration of David Breshears CPA/CFF ["Breshears Report"]) at ¶ 10, Ex. H (Supplemental and Rebuttal Declaration of David Lewin, Ph.D. ["Lewin Report"]) at ¶ 19. |

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| **18.** Plaintiff's personnel file does not contain a signed a meal period waiver form, nor is there evidence he ever signed one. | Plaintiff's Response: **Immaterial—Plaintiff need not have suffered a meal period waiver violation in order to pursue his PAGA claim in this case.[2]** <br><br> Defendants' Evidence: <br> Holman Decl. ¶ 5. |
| **19.** Plaintiff himself admits that he understood he did not enter into an employment relationship with Defendant until the drug test precondition was met. | Plaintiff's Response: **Disputed** <br> The evidence cited by Defendants does not support the fact alleged. In Plaintiff's testimony, he is describing the contents of Defendants' job offer letter that said his employment was contingent on passing a drug test. (Jimenez Decl, Ex. A at 97:1–25.) He did not testify that, in fact, his employment relationship did not begin until after the drug test. Plaintiff has, instead, stated the opposite — that his |

---

[2] *Huff v. Securitas Sec. Servs. USA, Inc*., 23 Cal. App. 5th 745, 754 (2018), reh'g denied (June 13, 2018), review denied (Aug. 8, 2018) (Labor Code penalties are recoverable by a PAGA plaintiff if he or she is affected by at least one of the violations alleged in the complaint).

| DEFENDANTS' FACTS | SUPPORTING EVIDENCE |
|---|---|
| | employment relationship pre-existed the required drug test.<br><br>Defendants' Evidence:<br>Jimenez Decl. ¶ 2, Exh. A, Castro Depo., p. 97:1-7, 23-25<br><br>Plaintiff's Evidence:<br>Grant Dec., Ex. A (Castro Tr.) at 96:21-98:2, Ex. 9; Castro Dec. at ¶ 3. |
| **20.** During the application and drug testing process, Sylmar has no authority to transfer, promote, discipline, or discharge the applicants because they have not yet been hired. | Plaintiff's Response:<br>**Disputed—Defendants specifically warn that job offers are contingent (and thus will be revoked) unless the new-hire obtains a clean drug test, and that those who refuse to take a drug test will be terminated.**<br><br>Defendants' Evidence:<br>Holman Decl. ¶ 7.<br><br>Plaintiff's Evidence:<br>Grant Dec., Ex. A (Castro Tr.) at Ex. 9; Castro Dec. at ¶ 3. |

Page 19          Case No. 2:20-cv-02110 PA (MRWx)
Plaintiff's Response to Defendants' Separate Statement of Uncontroverted Facts and
Conclusions of Law In Support of Defendants' Motion for Partial Summary Judgment

## PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| ADDITIONAL FACTS | SUPPORTING EVIDENCE |
|---|---|
| **21.** Defendants employed Plaintiff as a non-exempt, hourly-paid employee from July 2011 through March 2019. | Castro Dec. at ¶ 2. |
| **22.** Plaintiff worked as a Production Operator and Metallic Coatings Technician in Sylmar, California, where he ran maintenance on equipment, cleaned glass to eliminate marks and smudges, was responsible for coating glass and checking light transfer qualities, and maintained work area organization and sanitation, among other duties. | Castro Dec. at ¶ 2 |
| **23.** Defendants' written Meal and Rest Break Policy authorizes and permits employees to take 15 minute rest breaks and delineates when and how frequently rest breaks are permitted. The policy further provides that "[e]mployees also may not leave work premises during a rest break.". | Grant Decl., Ex. C [Holman Tr.], Ex. 4. |
| **24.** An "Interoffice Correspondence" regarding "Rest Periods and Meal Breaks for Non-Exempt Employees" that was distributed to employees | Grant Decl., Ex. C [Holman Tr.], at 63:18-24, Ex. 20. |

| | |
|---|---|
| "helped explain [the Meal and Rest Break Policy] to the employees." The correspondence not only reinforced the mandate that "Employees are not permitted to leave the facility during rest breaks," it described Defendants' rationale for requiring employees to remain under their control on work premises, stating: "Rest breaks are paid time and, as such, employees must be available for productive work." | |
| **25.** Plaintiff personally experienced Defendants enforcing the on-premises restriction when a human resources representative told him that he was not even permitted to go in front of the building, to stand under the "PPG" company sign, during his rest breaks. | Grant Decl., Ex. A [Castro Tr.] at 57:13-18; 221:11-222:7, 225:15-226:7; Castro Decl. at ¶¶ 5-10. |
| **26.** Plaintiff's co-workers were similarly told they could not leave the premises on their breaks. | Castro Decl. at ¶¶ 7-9. |
| **27.** While working for Defendants, Plaintiff was called back to work multiple times during his rest breaks to deal with work-related issues. | Castro Decl. at ¶ 6. |
| **28.** Rest break premiums are not automatically paid to employees who suffer rest break violations, as | Grant Decl., Ex. C [Holman Tr.], Exs. 4 and 20; Ex. E (7/23/20 Correspondence from Counsel re Errata and |

| | |
|---|---|
| California law requires. Instead, Defendants require their employees to submit a "California Meal Period and Rest Break Premium Request Form" ("Premium Request Form"), reporting late, short, or missed meal periods or rest breaks, and only then are supervisors permitted to order the payment of break premiums. | Supplemental Production ["7/23/20 Correspondence"] at Ex. A [California Meal Period and Rest Break Premium Request Form ("Premium Request Form")].) |
| **29.** If a California Meal Period and Rest Break Premium Request Form is not submitted, no meal or rest break premium is paid to Defendants' employees despite the occurrence of a meal or rest break violation. | Grant Decl., Ex. C [Holman Tr.], Exs. 4 and 20; Ex. E [7/23/20 Correspondence at Ex. A (Premium Request Form)] |
| **30.** Throughout the Wage Statement Subclass period, Defendants issued wage statements that listed the employer as Sylmar Corp. and its address as "One PPG Place, Pittsburgh, PA 15272." | Grant Decl., Ex. B, [Painter Tr.] at 42:7-43:19; Ex. D [7/22/20 Correspondence from Counsel re Errata ("7/22/20 Correspondence")] Correction No. 3 ("Q. So before February 2020 was the address indicated of 1 PPG Place on non-exempt employees who work at Sylmar plaint's pay statements. A. Yes" |
| **31.** The actual address of Sylmar Corp. is 12780 San Fernando Road, Sylmar, CA 91342. | RJN, Ex. 4 [CA Secretary of State – Entity Detail] |

PLAINTIFF'S RESPONSE TO DEFENDANTS' SEPARATE STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

| | |
|---|---|
| **32.** Once a hiring decision is made, Defendants require new hires to sign his or her job offer letter. | Grant Decl., Ex. A [Castro Tr.], Exh. 9. |
| **33.** Defendants' job offer letter details the Defendants' requirement that employees pass Defendants' "intoxicant screen" and informs them that they will be provided with instructions for when and where to take this drug test. | Grant Decl., Ex. A [Castro Tr.], Exh. 9. |
| **34.** Defendants' employees are advised that their continued employment is contingent on passing this drug test, and if they refuse, they will be terminated. | Grant Decl., Ex. A [Castro Tr.], Exh. 9; Ex. F [PPG Drug Policy]. |
| **35.** Defendants' job offer letter specifically notes that the drug test is not to be provided until after the employee has accepted Defendants' job offer, stating "Upon your acceptance, we will make arrangements for the company paid intoxicant screen and physical examination" and Defendants specifically stated that their continued employment was "contingent upon … passing [Defendants'] intoxicant screen." | Grant Decl., Ex. A [Castro Tr.], Exh. 9 |

| | |
|---|---|
| **36.** In submitting to the drug tests, the new hires are under the control of Defendants with respect to when and where the exam is to take place, and the results of the exam, which are sent only to Defendants, not the employees, and the testing is done for the benefit of Defendants. | Grant Decl., Ex. A [Castro Tr.] at 96:21-7, 98:1-2, Exh. 9; Ex. F [PPG Drug Policy]; Castro Decl. at ¶ 3. |
| **37.** As Plaintiff recalls, once he signed and accepted the terms of the job offer letter, he became an employee of Defendants and was obligated to carry out their orders regarding the drug test if he was to keep his job. | Castro Decl. at ¶ 3. |
| **38.** Defendants' drug policy documents provide: "if an employee refuses to be tested under this policy, he or she will be terminated." | Grant Decl., Ex. F [PPG Drug Policy]. |
| **39.** During orientation Defendants obtain employees' signatures on blanket meal waivers along with other new hire documents requiring signatures, all before they have even worked a single shift. | Grant Decl., Ex. C [Holman Tr.] at 64:11-65:22, 85:25-86:7, 124:23-126:9, Ex. 21. |
| **40.** Defendants utilize a form "Meal Period Waiver Agreement" through which they have their employees "waive the Company's obligation to | Grant Decl., Ex. C [Holman Tr.], Ex. 21 |

| | | |
|---|---|---|
| 1<br>2<br>3 | provide a meal period on any day I work more than five hours but less than six total hours." | |
| 4<br>5<br>6<br>7 | **41.**    Defendants use a second form to cause employees to waive all second meal breaks for shifts between 10 and 12 hours long. | Grant    Decl.,    Ex.    E    [7/23/20 Correspondence] at Ex. B [Meal Break Waiver – 2nd Meal.) |
| 8<br>9<br>10<br>11<br>12<br>13<br>14<br>15<br>16<br>17<br>18<br>19 | **42.**    Following    the    Court's    Order regarding    Class    Certification, Plaintiff's    counsel    learned    that    on August 26, 2020, Defendants (through their    managers/supervisors) individually met with class members currently employed by Defendants and provided them with a pre-drafted form Settlement Agreement and cover letter ("Letter")    in    an    attempt    to    reach individual    settlements    with    each    of them. | Grant Dec. re Motion to Invalidate (Dkt. No. 67-1), at ¶ 4, Exs. A and B. |
| 20<br>21<br>22<br>23<br>24<br>25<br>26<br>27<br>28 | **43.**    The Settlement Agreement and Letter were misleading and confusing nature class members themselves. In particular, multiple class members have signed declarations indicating that (1) they    felt    pressured    to    accept    the settlement because it came from their employer; (2) they did not understand the claims being asserted in this case or | Grant Dec. re Motion to Invalidate (Dkt.  No.  67-1)  at  ¶  5,  Exs.  C (Declaration    of    Cherilyn    Clardy Thomas) and D (Declaration of Walter Olmedo). |

| what claims they would be giving up if they accepted Defendants' settlement offer; and (3) they did not feel they had enough information to make an informed decision regarding the value of the settlement. | |

Dated:  December 14, 2020

Respectfully submitted,

Capstone Law APC


By:   */s/ Melissa Grant*

Melissa Grant
Bevin Allen Pike
Orlando Villalba
Joseph Hakakian

Attorneys for Plaintiff